Lee, J.
I concur in the results of the opinion delivered by Judge Daniel and in much of the reasoning by which he is brought to his conclusions. I do not think it necessary however in this case to review the decision of this court in the case of Pryor v. Kuhn, 12 Gratt. 615, or to determine what must be the frame of the exception or certificate which shall enable this court to review the action of a Circuit court in a case in which the parties have waived a jury and submitted the whole matter of law and fact to the judgment of the court. For if in such a case the same rule be adopted which has obtained in cases where there is a general verdict and a motion for a new trial upon the ground that the verdict is contrary to the evidence, and the exception or certificate in general, be required to set out the facts and not the evidence merely, the same modification should be also *432 adopted which has prevailed in the latter case; and if in a given case the evidence only and not the facts has been certified, yet if this court looking to the documentary evidence and the jiarol evidence of the party prevailing only, rejecting that of the party excepting, can see enough to enable it to say that the judgment of the court below is erroneous and to render judgment for the party excepting, I think it is its duty to reverse the judgment and to render judgment for the plaintiff in error. And as I think that in this case rejecting all the parol evidence offered by the plaintiffs and taking the documentary evidence and the parol evidence of the defendants alone, the proof is abundant to show the plaintiffs’ right to recover and also what should be the amount of their recovery, I consider it unnecessary to consider the frame of the bill of exceptions because in any view the reversal of the judgment and final judgment for the plaintiffs in error are inevitable.
There is another question discussed by Judge Daniel which I think not necessary to be decided in this case. It is as to the nature and character of the circumstances attending a sale and purchase of goods which shall so vitiate the same as to enable the vendor to avoid the transaction on the ground of fraud in the vendee and reclaim the property. For although there may have been such fraud in the conduct and representations of the vendee inducing the vendor to part with the goods as will enable the latter to avoid the . transaction and reclaim the property from the vendee, yet if the goods have gone into his possession as upoii a sale in the regular course of business, and have since come to the hands of a purchaser from the vendee without notice of the fraud, such purchaser will not be affected by the vice in the former sale; and as in this case the plaintiffs regresenting_the creditors pro-j vided for by the .deed of the 19th of November 1851,, *433 J under the terms and conditions of that ¿leed, are tojie regarded as purchasers of the goods for valuCjand no notice to them or to the creditors of any fraud in the purchase of the goods by Graff is proved or alleged, they cannot be affected by the alleged vice in the transaction between Graff and the defendants. Upon this question therefore I decline to express any opinion.
Daniel, J.
In this case the parties, after making up the issue, availed themselves of the provisions of the 9th section of chapter 162 of the Code, and by consent entered of record, “ agreed to waive a trial of the issue by a jury, and to submit the same to the court, who was to determine upon all matters of law and fact, and to give judgment accordingly.” And the court having found the issue for the defendants and given judgment accordingly, the plaintiffs excepted to the judgment, and moved the court to set aside the judgment and enter the same for the plaintiffs, or to award them a new trial on the ground that this judgment was contrary to the law and the evidence. But the court adhering to its judgment, and refusing to grant a new trial, the plaintiffs again excepted, and prayed the court to certify all the evidence; which the court accordingly did.
In this state of things the question has been raised here as to what ought to be the character of the certificate to be made by the court when the trial has been had, and the judgment rendered, under the provisions of the section just mentioned, viz: Whether it ought to be a certificate of the evidence or of the facts.
In the view I have taken of the case, the decision of this question is not essential in enquiring whether the circuit court was correct in its judgment. For if we wholly disregard all the evidence adduced by the plaintiffs except the deed, and give full credit and weight to all the evidence adduced by the defendants, certain *434 propositions of law are presented by the case so made, decision of which will show either the error or of the judgment. In other words, all the elements material to determine the question of the right of the plaintiffs to recover, appear as fully from an inspection of their documentary evidence, the deed and the parol evidence of the defendants, as they do on looking also into the parol evidence of the plaintiffs. If the plaintiffs are entitled to recover at all, they must, in the view I have taken of the case, recover by force of the deed of trust, or of the transaction with Myerson, proved by himself on his examination as a witness by the defendants, and possession of the goods in controversy, acquired under the circumstances detailed in depositions taken by the defendants. No fact is deducible from the parol testimony of the plaintiffs, (which is not also found in that of the defendants,) furnishing any additional support to the grounds of their claim above indicated.
In opposition to these grounds, the defendants say that Graff the grantor in the deed acquired the goods by a purchase from them, which was made under such circumstances of fraud, on his part, as gave them a right, on the discovery of the fraud, to cancel the sale, assert their original ownership, -and reclaim the goods. And they also assail the title of the plaintiffs as 'defective, for reasons which will be hereafter noticed.
It is proved that the goods were purchased of the defendants; and it becomes necessary at the very threshold of the case to enquire whether Graff by virtue of said purchase acquired a title to the goods which he could pass to third persons.
That fraud, practiced by the vendee in the procurement of the sale, may so far vitiate it as to confer on the vendor a right, on the discovery of the fraud, before the rights of innocent third parties have inter- *435 veiled, to avoid the sale and demand restitution of the property, is a proposition well established by decisions in England and in this country. 2 Rob. Pr. 499, cases there cited. There is, however, much conflict of authority as to the nature of the circumstances, the character of the elements, essential to the constitution of such fraud. Where the fraud to be enquired into is of the character alleged in this case, numerous decisions may be found, in which it has been held that the insolvency of the vendee, at the time of the sale, known to himself and not disclosed to the vendor, accompanied by a design on the vendee’s part not to pay for the property, is sufficient to constitute the fraud, whilst in some of the more recent cases it has been held that conscious insolvency, though not disclosed, and an intention not to pay, on the part of the buyer, at the time of the contract, are not of themselves sufficient to vacate a sale, on the score of fraud: But that in order to justify the rescission of the sale, it is essential to be shown that the dishonest purpose of the buyer was consummated by some artifice, contrivance or false representations, intended and calculated to deceive. I do not deem it necessary to decide in which of these two lines of conflicting authorities the best exposition of the law is to be found, inasmuch as the application to this evidence, of the rules most favorable to the rights of the vendee, will, I think, result in showing that the sale was procured by fraud. The embarrassed pecuniary condition of Graff; his practice before and after and about the time of the sale, of purchasing goods in the northern cities on credit for the Wheeling market, and after they reached Wheeling, having the goods immediately sent to Pitts-burg and Steubenville, and probably other places, to be sold at auction for cash — first effacing his own name from the boxes in which they were contained, and marking in the place thereof the name of an irre *436 sponsible person; his purchasing from other merchants, about the time of his purchase from the defendants, large quantities of goods, constituting in the aggregate an amount of stock wholly disproportioned to the ordinary and legitimate demands of the business in which he was engaged; his getting the same kinds of goods from different- merchants, (or as, in the language of one of the witnesses, the duplicating of his goods,) without any apparent motive connected with the style, quality or price of the goods, are circumstances which, taken in connection with the representations made by him to one of the defendants at the time of the sale, in respect to the floimshing state and prospects of his business, and the proof of his real pecuniary condition at the time and shortly after, wTould have well warranted a jury in finding that the defendants were defrauded in the sale. And if they had pursued the goods and reclaimed them (as it seems some other merchant from whom he bought goods about the same time, did) before there was any intervention of the rights of third persons, I know of no legal impediment that could have been placed in the way of their obtaining restitution. It is, however, well settled in England, that fraud in a sale does not absolutely avoid the contract, but only renders it voidable at the option of the party defrauded; that though the fraud gives a right to rescind, the property, in the subject matter, passes in the first instance to the vendee. And that an innocent purchaser from the vendee may acquire an indisputable title to the property. Stevenson v. Newnham, 16 Eng. L. & Eq. R. 408. And such was the decision of this court in the case of Williams v. Given, 6 Gratt. 268.
There is some contrariety in the decisions of other states as to whether a deed of trust, by the vendee, for the security of pre-existing debts simply, places the assignees in any better position to dispute the *437 claim of the cheated vendor than the fraudulent vendee had, at the date of such, assignment. In most of the cases, however, I think it will be found that the question turned on the further question, whether the trustees or creditors ought to be treated as purchasers for value; and that when the latter question has been decided in favor of the assignees, they have been generally protected against the claim of the original vendor.
And I think it has been the constant course of the courts in this state to regard the creditors in a deed of trust, made by their debtor, bona Jiie for their indemr! nity, in the light of purchasers for value.
The judgment which has been obtained by the defendants cannot be vindicated, therefore, unless it can be shown that the conveyance under which the plaintiffs claim labors under some defect or vice which prevents its operating, or destroys its validity, as a deed of trust. And in anticipation of such a difficulty in the way of their success, the defendants have contended here that the goods in controversy are not embraced in the deed, and that they are not brought within its operation by force of the transaction between the plaintiffs and Myerson. They also assail the deed because of certain provisions which it contains, which, they say, if not by the laws of Virginia, at least by the laws of Ohio, in which state the goods were at the date of the coiiveyance, render it fraudulent and void, and therefore inoperative against their claim. I shall proceed to examine each of these positions in the order in which they have been mentioned.
It is conceded that the goods in controversy do not pass by the first clause of the deed, which conveys only certain property, rights and interests therein, specifically mentioned and described. But in the clause next to the last it is provided, that “ if through accident, or forgetfulness, or inadvertence,” the said Marx Graff may have omitted to mention any claim *438 or property, the same shall be understood as being conveyed to the trustees, as, fully as if specifically mentioned. It is perhaps difficult to believe that so ■large and valuable ■ a portion of his property as these goods constituted, (supposing them his,) could have been omitted by Graff, through “ accident, forgetfulness or inadvertence;” and it is thence argued that they should not be held to be embraced in and conveyed by the deed. Such a construction would, however, it seems to me, be plainly at war with the leading intent of the parties and the obvious scheme of the deed, to be derived from an inspection of the instrument taken as a whole. For in the commencement of the deed the grantor, after reciting his indebtedness to “ various firms and individuals, expressly states his desire, by the execution of the deed,” to provide a fund for the payment of his said liabilities, and for this purpose to devote all the property of every kind, which he possesses, or is entitled to possess, to the creation of such fund. He then proceeds to convey all his stock of goods in Wheeling, all his h'ousehold and kitchen furniture, all his bonds, notes, accounts and evidences of debt, and also an unexpired lease of his dwelling and store-house. And then, after setting out the trusts upon which the property is conveyed, he makes provision, in the manner already mentioned, for any of his property which may have been omitted.
It is I think manifest, from an examination of the whole instrument, that the scheme proposed was a dedication by the grantor of his entire property of every description to the payment of his debts, on the condition that his creditors should release him from any balance that might remain due to them after receiving respectively their pro rata shares of the proceeds of his estate.
Expressions in the deed of an equivocal character should receive such a construction as will support *439 rather than one which might defeat the scheme. And under such a rule of interpretation there is, I think, no serious difficulty in holding that the words in question were designed not to control or limit the operation of the other words in the clause, but simply to indicate some of the cases through which the grantor may have failed to mention, specifically, property that might thereafter be found to have belonged to him at the date of the deed; and that the true meaning and effect of the whole clause was so to extend the deed as to make it embrace all of the grantor’s property, whether specifically mentioned or not, and thus to carry out fully the purpose declared in the recital. The determination therefore of the question whether these goods are conveyed by the deed, must properly be the result of the simple enquiry, whether at the date of the deed the grantor had any property in or right to them, which he could convey, uninfluenced by any speculation as to how or why, or whether through “ accident, forgetfulness or inadvertence,” or otherwise, there was a failure to mention them in the first clause of the deed.
The purchase of the goods by Graff has been already examined and commented on, -and there is no evidence tending to show that he had divested himself of the property therein, so acquired, at any time previous to the date of the deed, unless he parted with them by force of the transaction of September 1851, between him and Myersou, disclosed in the. deposition of the latter, on his examination by the defendants. But if, as argued here, the legal effect of that transaction was so to devest Graff of title to the goods, and to vest Myerson with it, as that a conveyance of the goods thereafter to his creditors by Graff, would not pass them, I do not see how the claim of the plaintiffs is in any regard impaired thereby. For it is, I think, obvious that the same rule of law which, in *440 the view of the case taken by the defendants, would give to the transaction the force of depriving G-raff of the right thereafter to assign or convey the goods, would at the same time give effect to the transfer and assignment of the note, which was given by Myerson on receiving the goods. Graff acquired, by the color-able sale or arrangement between him and Myerson, a title to the debt evidenced by the note, in all respects equal, in force and extent, to the title vested in Myerson to the goods. The deed, as we have seen, assigns, with specific mention, all of the grantor’s bonds, notes, &c.; and confers on the trustees not only the power to collect them by suit or otherwise, but also full authority to compromise and compound disputed or doubtful claims, and to take such sum of money for the same or receive any other thing in lieu or exchange therefor as they might deem for the interest of all concerned. And as by the arrangement by the trustees with Myerson-, the latter, on the terms of getting back his note, surrendered, or (to use his own language) disclaimed all right or claim to the goods, and delivered to the trustees the ware-house receipt which he had obtained for the same, the goods were, it seems to me, as fully covered by the deed as if there had never been any arrangement between Graff and Myerson respecting them, and they had been specifically mentioned in the first clause of the deed.
No question under the recording acts, or as to notice whether actual or constructive, by the defendants of the rights of the plaintiffs, arise in the case, inasmuch as it is shown that the plaintiffs had obtained the actual possession of a part of the goods, and the virtual possession of the whole, before the occurrence of any active interference with their rights by the defendants ; it being proved by Doyle, on his examination by the defendants, that Wickham had delivered up to him the ware-house receipt, (which embraced *441 also twenty other boxes of goods,) had commenced hauling the goods to the river to be transported to Wheeling; and had carried about half of them to the wharf when he was arrested in his proceedings, and the goods were ordered back to the ware-house by the sheriff.
The plaintiffs having thus shown a complete and perfected title to the goods, it remains to be considered whether the deed under which they claim is void because of the provisions in it objected to by the defendants.
It appears, from the report of the decision of the Supreme court of Ohio in the case of Atkinson & Rollins v. Jordan Ellis, &c. 5 Ohio R. 294, which was given in evidence by the defendants on the trial, to have been decided by that court, that an assignment of effects by an insolvent debtor to trustees for the benefit of preferred creditors, with a clause that those who do not within a time specified release the debtor on account of what may be received from the proceeds of the assignment, is void as against other creditors : And that the effects assigned may by proper process be subjected in the hands of the assignee. And it must be conceded that the provisions of the deed under consideration would seem to fall fully within the principles declared by the court in announcing their decision. It does not appear from the report of the case, however, where the creditors or debtors resided, where the deed was made, or where the property was at the date of the deed; but the fair inference is, that the controversy was between citizens of that state, in respect to the operation of a deed made in that state, and purporting to convey property there situated; inasmuch as there is no reference in the opinion of the court to any question of conflict of law which would show that the forum, the domicil, the place of the contract, and the situs of the property, were not all the same.
*442 The defendants also , gave in evidence an act of the genei’al assembly of Ohio, passed in 1838, by the 3d section of which it is declared, that “ all assignments property in trust to trustees in contemplation of insolvency, with the design to prefer one or more ereditors to the exclusion of others, shall be held to enure to the benefit of all the creditors in proportion to their respective demands; and such trusts shall be subject to the control of chancery as in other cases; and the court, if need be, may require security of the trustees for the faithful execution of the trusts, or remove them and appoint others, as justice may require.” It is to be observed that the act does not in terms avoid the assignments therein mentioned, but only declares that they shall enure for the benefit of all the creditors. And the provision in respect to the control of the trustees, by requiring security of them, &c. would seem to favor the view of the plaintiffs’ counsel, that the effect of the statute is not to invalidate the legal title of the trustees, but simply to provide for and insure an equitable distribution' of the fund.
I do not deem it necessary, however, that we should construe this statute, or determine the effect which it ought to have on the previous decision of the Supreme court of Ohio, already mentioned; inasmuch as I have been unable to perceive how such decisions or statutes of that state can be made to bear on the controversy. For it is well settled, as a general rule, that a transfer of moveable property, good by the laws of the owner’s domicil, is valid wherever else the property may be situate. It is true that this rule is liable to exceptions; one of which is, that where the transfer is opposed to the laws of the country where it is sought to be enforced, the courts of such country are not bound to give it effect against the conflicting rights of its own citizens. Black v. Zacharie & Co. 3 How. U. S. R. 483, 514; Story on Conflict of Laws, § 383 to 390, inclusive; *443 1 Rob. Pr. (1854) 156. In the cases of Burlock v. Taylor, 16 Pick. R. 335, and Ingraham v. Geyer, 13 Mass. R. 146, cited by the last mentioned author, may be found appropriate illustrations as well of the rule as of the exception. In the last mentioned case an assignment of his effects by a debtor in Pennsylvania in trust for such of his creditors as should within a specified time release all 'their demands against him, the surplus to be distributed pro rata among his other creditors, and the remainder, if any, to be paid over to the assignor, was holden to be void as against a creditor, a citizen of Massachusetts, who. had acquired a lien after the assignment. The court said that such an assignment, if, made within the state of Massachusetts by parties residing there, and with a view to be there executed, could not have been supported, chiefly on the ground of its excluding such creditors as would not give a discharge of their debts; and that though such an assignment might be good in Pennsylvania, there was no comity which would require the court to give it validity against the rights of the citizens of Massachusetts. But in the first mentioned case, an assignment in New York, which was valid by the laws of that state, was sustained against the subsequent attachment of a citizen of New Yorlc of property in Massachusetts belonging to the debtor, although such assignments were, under the laws of Massachusetts, invalid. If this suit, therefore, had been brought in Ohio, there is nothing to show that the courts in that state would have been j ustified in departing from the general rule. None of her citizens are parties to the controversy, and no decision or law of Maryland, in which state the goods were bought, and in which the defendants reside, has been given in evidence to show that bona fide purchasers from the vendee are not protected from the claim of the vendor to rescind the sale of the goods for fraud in its procurement, or that par *444 ties standing in the attitude of the plaintiffs, do not occupy the position of bona fide purchasers.
In such a state of things an Ohio court, having no motive to make an exception to the general rule, would have yielded to it, and would have adjudged the question as to the validity of the deed of trust by reference to the laws of Virginia, where the deed was made. Let this be as it may, however, the plaintiffs, in the prosecution of their rights, have not found it necessary to invoke the aid of the courts of Ohio. They have instituted their suit in Virginia; and it would involve an entire departure from all rule on the subject, to hold that a court of Virginia, in passing on a deed of trust made in this state, upon trusts to be performed here, the grantor and the trustees being all citizens 'of Virginia, is to be controlled, not by its own laws and decisions, but by the laws of another state, merely because the property in controversy was at the date of the deed in such other state, and because the trustees perfected their legal title to the property, by reducing it to their possession within the limits of said last mentioned state. And it is well settled in Virginia, that clauses, such as the one objected to, in deeds of trust conveying all of the debtor’s property for the security and satisfaction of his creditors, do not invalidate the deeds. Skipwith v. Cunningham, 8 Leigh 272; Phippen v. Durham, 8 Gratt. 457.
The title of the plaintiffs is, therefore, as it seems to me, free from any vice or defect, and was complete when the tort complained of was committed by the defendants. And I think that the Circuit court erred in rendering a judgment for the defendants, and that said judgment should be reversed. The enquiry now arises as to the judgment to be rendered by this court.
If the proceedings are to be regulated by the rules prevailing in writs of error and supersedeas founded on exceptions taken to an erroneous. refusal of the court *445 below to set aside a general verdict on the ground of its being contrary to the law and the evidence, all we can do, after reversing the judgment, is to send cause back for a new trial. If, on the other hand, we are to be governed by the rules prevailing in cases of appeals from erroneous judgments on the merits, rendered in cases of mills, wills, roads, and of motions, where the courts below have acted as judges of both law and fact, it is our duty to render a judgment in behalf of the plaintiffs for such sum as they have shown themselves entitled to. The latter of the two views is that which was contemplated by the revisors, and by them presented to the legislature in their report. In their note to the section under which the proceedings and judgment in question were had, they say, “ This privilege (in the first part of the section) is given in the case of a will offered for probat by the law at present; and in all cases of motion the whole case of law and fact may be and generally is determined by the court. There are many cases in which the parties would prefer, for the purpose of saving expense and avoiding delay, that the court should decide the whole case. The right of exception to the judgment of the court will be preserved ; it will merely be to the judgment of the court, instead of being, when the trial is by jury, to the admissibility of evidence, or to instructions given or refused, or to the decision on a motion for a new trial. One great advantage when the parties waive the trial by jury, will be, that when the court above reverses the judgment of the court below, either for matter of law or fact, there will be no necessity to send the case .back for a new trial.” Rep. of Rev. 816. .
In the case of Pryor v. Kuhn, 12 Gratt. 615, decided at the last session of the court in Lewisburg, the character of the certificate to be made by the judges of the Circuit courts in cases of exceptions to their judg *446 ments under this section, was discussed and considered by *ke cour^ ’ anc^ I concurred in the opinion of the of the court holding that the bills of excep^ons ™ suc^ cases should so far conform to the practice regulating exceptions to the action of the courts below in overruling motions for new trials, as to eon-a statement by the judge, not of the evidence, but of the facts proved on the trial. In that case, however, the evidence was conflicting and contradictory, and the majority of the court, as also the judge who dissented on the question of practice in respect to the certificate, all concurred in the opinion that under the application of either rule of practice the case could not be reversed. There was, therefore, nothing in the state of the case making it necessary to decide the question which arises in this as to the nature of the judgments to be rendered here in reversing judgments of the Circuit court obtained under this section ; and this is therefore the first occasion on which the precise question has been distinctly presented to the consideration of the court for its decision.
A single view of the difference between the two proceedings, where in the one case the judgment of the court follows as the legal consequence of the verdict of a jury, and where in the other it is the decision of the court on its own view, as well of the facts as the law, has sufficed to convince me that it is our duty to render a final judgment for the plaintiffs instead of remanding the cause for further proceedings. There is, properly speaking, no such thing as an appeal from the verdict of a jury. Though the court which presides at the trial of a case before a jury, has a right, for certain causes, to set their verdict aside, it cannot give a decisive expression of its views of the merits of the controversy, in the shape of a judgment, until there is a verdict on which to found such judgment. However manifest may be the error of the jury, and *447 however satisfactory and complete the elements out of which to make the verdict which in the opinion of the court ought to have been made by the jury, all the court can do is to set aside the verdict and award a new trial before another jury. And when an appeal is taken from an erroneous judgment of a court refusing to award a new trial, as the appellate court, after reversing, is to render the judgment which the inferior court ought to have rendered, it can, necessarily, give no further judgment than to award the new trial. But when the parties waive a trial by the jury, and agree that the court may act as judge both of the law and the fact, the court is vested with the power and charged with the duty of making a complete decision by its judgment. If upon appeal from such judgment the appellate court perceives error in it and reverses it, there is no necessity for, or propriety in, sending the cause back in order that the error may be corrected in the court below. To award a new trial before a jury is to render a judgment which the inferior court could not have rendered without violating the agreement of the parties that the matter should be determined by the court without the intervention of a jury. And to remand it that the court below may make up and pronounce a new judgment, such judgment as in the opinion of the appellate court it ought to have given before, is simply to require of the inferior court to do what the law makes it the duty of the appellate court to do itself.
I have already expressed the opinion and endeavored to show that the plaintiffs have proved their case by their deed and the defendants’ evidence, and that the case therefore would come within well recognized exceptions, even on the concession that in cases of this kind the general rule, applicable to bills of exceptions to judgments refusing new trials, requiring the facts to be certified, should prevail. It is not, *448 therefore, essential to the decision of the case that an opinion should be expressed as to the practice which govern the Circuit courts in making their cerbifieates. The question is, however, as I conceive, closely connected with the character of the judgment to be rendered by the appellate court, a question which it has become necessary for me, in the view I have taken of the case, to consider. And as the examination of the last mentioned question has resulted in satisfying me that the opinion, in respect to the first, which I entertained and united with the majority of the court in Pryor v. Kuhn, in expressing, is erroneous, I deem it proper to avail myself of the occasion to declare the change of opinion. The reference to the comments of the revisors on the section of the Code under consideration, already cited, to which my attention was for the first time called on reading the opinion of the dissenting judge (Moncure) in the case just mentioned, (which owing to the late period of the session at which the case was decided, was not reduced to writing till after the close of the session,) and the more special enquiry which I have been led by such reference and the demands of the present case, to make as to the purpose and object contemplated in the enactment of said section, have convinced me that it was the design of the legislature to conform the course of the court below in such cases, as well in passing on the case as in furnishing to the defeated party the means of testing the correctness of its judgment in an appellate court, as also the action of the latter court in reviewing the judgment — all— to the practice prevailing in cases of wills, mills, roads, and motions on the merits generally, and not to that which has been adopted in cases of motions to set aside verdicts and grant new trials. That the judgment of the appellate court when it reverses, is to be thus regulated, I have already attempted to *449 show, and there seems to be a want of consistency in holding that the proceedings in the previous stages are to be governed by a different practice. When the parties expressly waive the trial by jury and agree that the court shall act upon and determine the case as judge both of the law and the fact, what grounds have we for supposing that the legislature, in providing the privilege, or the parties in accepting it, did not mean that their rights in the case should thenceforward be regulated and determined in all respects, by the rules governing in other cases where the court acts as judge both of law and fact? What is there in the terms of the section to show the propriety of placing the defeated party in the predicament of one whose pretensions have been condemned by the verdict of a jury as well as the judgment of the court below, when there has not only been no verdict, but it has been expressly dispensed with by the assent of his adversary, entered of record ?
Whilst the course of this court has been uniform in discountenancing the practice of the courts below in certifying the evidence instead of the facts on motions for new trial, it has been just as uniform in allowing such certificates in cases where the court below has rendered judgment on the law and the facts without a jury. In the vast number of appeals which have come up to this court from judgments in controversies respecting the probat of wills, the establishment of roads and mills, in motions on forthcoming bonds, and against sheriffs and their deputies and sureties, and in motions by corporation's against delinquent shareholders, and in many other classes of cases where the judgments have been rendered by the courts below on the whole case, I have seen none in which this court has refused to look into the bill of exceptions, simply because of its containing a statement of the evidence. ° The difference of practice prevailing in the two classes of cases was *450 well known to the legislature, and the inference seems to my mind a necessary one, that in providing for dispensing with the jury and submitting the case to the judge, they would have said otherwise, if they did not mean to subject the proceedings to the rules governing in all other cases where the court is allowed or required to act as judge both of law and fact. This view, it seems to me, derives support from the consideration that the legislature were, at the very period of the enactment of the section under review, engaged in greatly extending the remedy by motion. Without adverting to other instances, it is sufficient to notice a striking illustration of the change of policy in this regard, apparent in the fifth section of chapter 167, in which it will be seen that any person entitled to recover money by action on any contract, may, on motion before any court which would have jurisdiction in an action, obtain judgment after sixty days’ notice, &c. It is true that in the seventh section it is provided that on a motion where an issue of fact is joined and either party desire it, or where in the opinion of the court it is proper, a jury shall be impanneled, &c.
What is the character of the proceedings in the particulars we are considering, in cases arising under this law, where neither party shall call for a jury? Is a defeated party in such case to occupy the attitude of one seeking to set aside a verdict? Is he to ask the court to set aside its judgment and grant him a new trial ? And if refused, is he bound to procure a certificate of the facts; or did the legislature mean that . the proceedings should be of the same character with the proceedings that the practice of the courts has sanctioned in other motions on the law and facts? What warrant have we for saying to a party appealing from a judgment of the court below, rendered under this law, upon a bill of exceptions setting out the evidence, that we will not enquire into the alleged injus *451 tice, because he has not procured such a certificate of the facts as has been heretofore required only in cases of unsuccessful motions to set aside verdicts? The answer seems to my mind obvious. If the legislature had designed to except the proceedings, in any particular, from the operation of the well known practice prevailing in other cases of motions in which the whole case is decided by the court, on the law and the evidence, they would have used some express declaration to indicate such purpose. If in the case of a motion neither party desires a jury, or if in an action the parties waive a jury and submit the whole case to the court, in either case it would seem to me fair to infer, in the absence of all declaration by the legislature to the contrary, that they intended the practice in motions on the merits to govern. And in such cases, if the defeated party excepts to the judgment and spreads out the evidence in his bill of exceptions, he does all that it is incumbent on him to do in order to prepare the case for the appellate court. Where the case turns on the credibility of witnesses, or, as it did in Pryor v. Kuhn, on the weight of conflicting and contradictory evidence, an appeal to the court can be of no avail to the defeated party. For in such case, acting on the rule announced in Dudleys v. Dudleys, 3 Leigh 436, 445, and constantly adhered to, this court will presume that the inferior court that saw and heard the witnesses, has decided correctly. But in cases where the reversal of the action of the court below does not involve this court in the necessity of deciding on the credibility or weight of evidence impeached or contradicted in the inferior court, I should not feel warranted in refusing relief on the score that the defeated party brought up, in his bill of exceptions, the evidence of the witnesses instead of a certificate of the facts.
I still think that the decision in Pryor v. Kuhn was right; but, in expressing the opinion that the practice *452 in cases of this kind should be regulated by the rules governing bills of exceptions to judgments of the courts below, refusing to set aside the verdicts of juries, I think we mistook the intention of the legislature. I have deemed it my duty to take this the earliest occasion to state the change of opinion which my mind has undergone on the subject, and to set out some of the reasons that have induced that change. I forbear making any further statement of the arguments which might be advanced in support of my conclusions, as I should have to extend this opinion to an unreasonable length, and to present views which have been already clearly and fully stated in the opinion of Judge Moncure, before mentioned.
The amount for which the judgment of this court ought to be given, remains to be briefly considered. It appears from the testimony that the goods in question were appraised in Baltimore on the 5th of December 1851, by experienced merchants, at the sum of three thousand two hundred and ninety-four dollars and twenty-four cents. And the evidence clearly shows that the goods would have probably sold for more at Steubenville. There is some conflict in the testimony of the defendants’ witnesses as to the sum which should be added to the value of the goods in Baltimore in December, in order to show their probable value in Steubenville on the 20th of November previous, the date of the conversion. Some of the witnesses fixing such further sum at ten per cent, on the value aforesaid, ascertained in Baltimore; and others at a higher rate. I think that the former is that best established; say three hundred and twenty-nine dollars and forty-two cents. The aggregate of these two sums, viz: three thousand six hundred and twenty-three dollars and sixty-four cents, to carry interest from the 20th day of November 1851, the date of the conversion, furnishes, I think, the true measure *453 of the recovery to which the plaintiffs should be adjudged entitled in this case.
Moncure, J. concurred in the opinion of Daniel, J.